# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 17 CR 239-1 |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Judge Thomas M. Durkin |
| | ) | |
| JESSICA O'BRIEN AND MARIA BARTKO, | ) | |
| | ) | |
| *Defendants.* | ) | |

### MEMORANDUM OPINION AND ORDER

Defendants Jessica Arong O'Brien and Maria Bartko are charged with engaging in a scheme to defraud lenders and obtain money and property from lenders through materially false pretenses and representations. The indictment alleges in Count I that defendants committed mail fraud in violation of 18 U.S.C. § 1341, and in Count II that defendants committed bank fraud in violation of 18 U.S.C. § 1344. The indictment also contains a forfeiture allegation.

Before the Court is defendant O'Brien's motion to dismiss Counts I and II of the indictment on duplicity grounds (R. 45). O'Brien argues that in both Counts I and II, the government has improperly joined four separate offenses into a single scheme to avoid the statute of limitations that would otherwise apply to bar the first three offenses. O'Brien claims the indictment is therefore duplicitous and prejudicial to her in a number of ways. Because this Court finds that the indictment fairly alleges a scheme and that potential prejudices can be effectively mitigated at trial, it denies O'Brien's motion to dismiss (R. 45).

**Standard**

"Challenging an indictment is not a means of testing the strength or weakness of the government's case, or the sufficiency of the government's evidence." *United States v. Moore,* 563 F.3d 583, 586 (7th Cir. 2009) (internal quotation marks omitted). Rather, a motion to dismiss seeks to correct a defect in the indictment, such as "duplicity." Fed. R. Crim. P. 12(b)(3)(B)(i).

"Duplicity is the joining of two or more offenses in a single count." *United States v. Hughes,* 310 F.3d 557, 560 (7th Cir. 2002) (quotation marks and citation omitted). "The overall vice of duplicity is that the jury cannot in a general verdict render its finding on each offense, making it difficult to determine whether a conviction rests on only one of the offenses or both." *United States v. Buchmeier,* 255 F.3d 415, 425 (7th Cir. 2001) (quotation marks and citation omitted). In addition to jury confusion, "a duplicitous indictment may expose a defendant to other adverse effects including improper notice of the charges against him, prejudice in shaping of evidentiary rulings, in sentencing, in limiting review on appeal, and in exposure to double jeopardy." *Id.* (quotation marks omitted).

An indictment is not duplicitous, however, if it charges a single offense carried out through different means. *United States v. Berardi,* 675 F.2d 894, 897 (7th Cir. 1982). Federal Rule of Criminal Procedure 7(c)(1) provides that "[a] count may allege that . . . the defendant committed [an offense] by one or more specified means." "The line between multiple offenses and multiple means to the commission of a single continuing offense is often a difficult one to draw," and "[t]he decision is

left, at least initially, to the discretion of the prosecution." *United States v. Davis*, 471 F.3d 783, 791 (7th Cir. 2006) (quotation marks omitted). "Where the indictment 'fairly interpreted' alleges a 'continuing course of conduct, during a discrete period of time,' the indictment is not prejudicially duplicitous." *Id.* at 790-91 (quoting *Berardi,* 675 F.2d at 898). More generally, the Seventh Circuit has held that "an indictment is legally sufficient" for purposes of Rule 7(c)(1) "if (1) it states all the elements of the crime charged, (2) adequately informs the defendant of the nature of the charges against him, and (3) allows the defendant to assert the judgment as a bar to future prosecutions of the same offense." *United States v. Vaughn*, 722 F.3d 918, 925 (7th Cir. 2013).

## Analysis

"Duplicity is not always fatal to an indictment." *United States v. Steurer*, 942 F. Supp. 1183, 1186 (N.D. Ill. 1996). Accordingly, this Court "first determine[s] whether the counts at issue are duplicitous," and then turns to the question of whether, in any event, "other measures can cure any prejudice that might exist." *Id.*

## I.    Duplicity of Indictment

Both Counts I and II of the indictment in this case allege a three-year scheme to defraud, causing lenders to issue and refinance loans related to two investment properties that O'Brien owned on the south side of Chicago. R. 1. The indictment alleges that this scheme was comprised of four transactions: (1) in 2004, O'Brien "fraudulently obtained mortgage loan proceeds to purchase an investment property located at 625 West 46th Street" by submitting mortgage documents with false

statements regarding her income and liabilities; (2) in 2005, O'Brien, with Bartko as the loan originator, "fraudulently refinanced her mortgage loans on the 46th Street property and on a second investment property located at 823 West 54th Street" by submitting applications with false statements regarding O'Brien's income and employment; (3) in 2006, O'Brien "fraudulently obtained a commercial line of credit" by submitting an application with false statements about her realty company's revenue and profit "and used those loan proceeds to maintain the 46th Street and 54th Street properties"; and (4) in 2007, O'Brien and Bartko "agreed that O'Brien would sell the 46th Street and 54th Street properties to Bartko" using "a straw buyer whom O'Brien and Bartko knew would be fraudulently qualified for mortgage loans." *Id.* at 4-7. For each of Counts I and II, the indictment alleges only one "execut[ion]" of the scheme—a single fraudulent mailing during the 2007 transaction in Count I and a single fraudulent issuance of a mortgage loan by a lender during the 2007 transaction in Count II. *Id.* at 9-10.

O'Brien maintains that each of the four transactions alleged in the indictment to comprise a scheme constitutes a separate offense, and that the indictment thus improperly "join[s] . . . two or more offenses in a single count." *See Hughes*, 310 F.3d at 560. But the question of whether these transactions *could* have been charged as separate offenses is not dispositive of duplicity. "[T]wo or more acts, each one of which would constitute an offense standing alone, may be joined in a single count without offending the rule against duplicity." *Berardi,* 675 F.2d at 898. In the context of mail and bank fraud specifically, for which the statutes criminalize

4

each "execut[ion]"[1] of a scheme, the Seventh Circuit has made clear that although "for each count of conviction, there must be an execution," "the law does not require the converse: each execution need not give rise to a charge in the indictment." *United States v. Hammen,* 977 F.2d 379, 383 (7th Cir. 1992). In other words, "an act which *can* be viewed as an independent execution of a scheme" and thus charged as a separate count does not *need* to be charged in a separate count. *United States v. King*, 200 F.3d 1207, 1213 (9th Cir. 1999) (citing *United States v. Bruce,* 89 F.3d 886, 889-90 (D.C. Cir. 1996)).

If several fraudulent executions are part of the same scheme, the government thus has discretion to (a) charge each execution in a separate count or (b) "allege only one execution of an ongoing scheme that was executed numerous times."

---

[1]     *See* 18 U.S.C. § 1341 ("Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of *executing* such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. * * *") (emphasis added); 18 U.S.C. § 1344 ("Whoever knowingly *executes*, or attempts to execute, a scheme or artifice— (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.") (emphasis added).

*Hammen*, 977 F.2d at 383; *accord Bruce*, 89 F.3d at 889-90 (denying motion to dismiss an indictment as duplicitous where it alleged "four separate loan applications each as one 'part'" of an "overall scheme" because the government "'carefully crafted the indictment to allege only one execution of an ongoing scheme that was executed numerous times'") (quoting *Hammen*, 977 F.2d at 383).

The government here chose the latter route. The indictment alleges only one execution in each Count: (1) in Count I, it alleges that a mailing on April 16, 2007 of a payoff check relating to the straw buyer's purchase of the 46th Street property constituted mail fraud in violation of 18 U.S.C. § 1341; and (2) in Count II, it alleges that the funding of a mortgage by Citibank, N.A. on April 16, 2007 for the straw buyer's purchase of the 46th Street property constituted bank fraud in violation of 18 U.S.C. § 1344. R. 1 at 9, 10.[2] And it describes the 2004, 2005, and 2006 transactions as part of a scheme rather than as separate executions of bank or mail fraud. *See* R. 1.

The fact that the indictment clearly charges only one execution in each count goes a long way toward satisfying Rule 7(c)(1)'s requirement of "adequately inform[ing] the defendant of the nature of the charges against h[er]." *Vaughn*, 722 F.3d at 925. It also distinguishes this case from *United States v. Tanner,* 471 F.2d 128 (7th Cir. 1972), on which O'Brien relies. In *Tanner*, the Seventh Circuit held

---

[2]    O'Brien does not challenge for purposes of this motion whether each of these 2007 executions was a complete offense falling within the statute of limitations. *See* R. 96 at 4 n.6. This fact distinguishes this case from *United States v. Anderson*, 188 F.3d 886 (7th Cir. 1999), where the court reversed a bank fraud conviction because "no conduct charged in the indictment . . . that constitutes" a complete "execution" occurred within the statute of limitations. *Id.* at 891.

that an indictment was duplicitous where the government had "delineate[d] as a single offense all trips [transporting explosives across state lines] that occurred within a period of time" without "defining at what point the act of transporting explosives is completed" or which trip completed it. *Id.* at 138-39; *see also United States v. Schock*, 2017 WL 4780614, at *20-21 (C.D. Ill. Oct. 23, 2017) (dismissing theft of government funds count as duplicitous where "the Government has made it impossible for Defendant (and the court) to determine which disbursement" of the numerous disbursements alleged "gave rise to the allegations" in that count).

Throughout her filings, O'Brien makes much of the likely reason the government chose to proceed this way: the 2004, 2005, and 2006 transactions would have been outside the statute of limitations if charged separately. But as long as they are part of the same scheme, this choice was within the government's discretion. *See, e.g.*, *Hammen*, 977 F.2d at 383; *United States v. Longfellow*, 43 F.3d 318, 322-25 (7th Cir. 1994) ("only one or two executions fell within the Statute of Limitations," but that "does not detract from the entire pattern of loans[ ] being a scheme, and renders Longfellow no less culpable for that entire scheme"); *United States v. Mermelstein*, 487 F. Supp. 2d 242, 254 (E.D.N.Y. 2007) (rejecting argument that "executions" of fraud completed outside the statute of limitations "are barred," because a fraud indictment "may properly charge, in a single count, a pattern of executions . . . as part of a single, overarching continuing scheme").

The crucial question therefore becomes whether the 2004, 2005, 2006, and 2007 transactions are all fairly alleged to be part of a single scheme to defraud. *See*

*Davis*, 471 F.3d at 790-91 ("an indictment can be duplicitous if numerous discrete instances of criminal conduct are lumped into a single count," but this is not the case if the indictment, "fairly interpreted," alleges a scheme) (quotation marks omitted); *United States v. Zeidman*, 540 F.2d 314, 317 (7th Cir. 2006) (the fact that "each of the frauds . . . could constitute a separate offense" was "not determinative" of duplicity where each count "charges only one mailing" and alleges a scheme). Although "[a]s its ordinary meaning suggests, the term 'scheme to defraud' describes a broad range of conduct," *United States v. Doherty*, 969 F.2d 425, 429 (7th Cir. 1992), a scheme is generally understood to be a "'continuing course of conduct, during a discrete period of time.'" *Davis*, 471 F.3d at 790 (quoting *Berardi*, 675 F.2d at 898); *see also* R. 46 at 11 n.26 & 14 n.27 (O'Brien citing *Davis* for same).

Where a defendant challenges the government's allegations of a scheme on duplicity grounds, courts analyze: "(1) whether defendant's alleged actions may legitimately be regarded as a single course of conduct" during a discrete time period; "and (2) whether defendant would be prejudiced by h[er] prosecution on a single-count basis." *United States v. Grossi*, 1995 WL 571417, at *3 (N.D. Ill. Sept. 25, 1995) (quotation marks and alterations omitted); *accord Berardi*, 675 F.2d at 899 (examining whether "offenses joined bear a relationship to one another and may be said to constitute a continuing course of conduct" and whether "[t]he dangers posed by a duplicitous indictment" are "present in the instant case") (quotation marks omitted). The Court addresses each consideration in turn.

**A.      Single Course Of Conduct During Discrete Time Period**

**Course of Conduct.** To determine whether transactions constitute a single course of conduct so as to be part of one scheme, the Seventh Circuit has looked to whether they "have a sufficiently close nexus" or are "sufficiently interrelated" with an eye toward meaningful commonalities and differences. *See Zeidman*, 540 F.2d at 317-18; *accord United States v. Hollnagel*, 2011 WL 3664885, at *9 (N.D. Ill. Aug. 19, 2011); R. 46 at 11 n.26 (O'Brien citing *Zeidman* for same). Having a sufficiently close nexus does not, however, mean that the transactions must be interdependent. O'Brien at one point invokes the test from the Seventh Circuit's decision in *United States v. Allender*, 62 F.3d 909, 912 (7th Cir. 1995), that "a separate execution must be chronologically and substantively independent and not dependent on another for its existence." R. 72 at 21-22. But that is the test for separate executions—not for separate schemes. Again, two or more executions of bank or mail fraud—*i.e.*, "chronologically and substantively independent" events, *Allender*, 62 F.3d at 912— can be joined in a single count as long as they are part of the same scheme. *E.g.*, *Hammen*, 977 F.2d at 383.

Here, unsurprisingly, the government emphasizes the commonalities among the four transactions alleged in the indictment, often at a high level, and O'Brien emphasizes the differences, often at a granular level. As the government explains, the common elements between the transactions alleged are: (1) they all involved at least one of a pair of investment properties in Chicago's south side; (2) they all involved O'Brien; (3) they all involved lies in loan documents; (4) they all involved

9

the same class of victims (lenders); and (5) they all involved the same goals (obtaining financing related to the two investment properties and personal enrichment). R. 55 at 6-7. Courts have found similar commonalities sufficient to allege a single course of conduct. *See, e.g.*, *United States v. Mason*, 2016 WL 2755401, at *2 (N.D. Ill. May 12, 2016) (alleged scheme to submit falsified documents to four different government entities at different times was not duplicitous and had "an adequate nexus" where conduct "occurred during the same two year time span, targeted the same class of victims, and utilized the same sort of fraudulent communications"); *United States v. Brown*, 894 F. Supp. 1150, 1154 (N.D. Ill. 1995) (scheme involving 13 defendants cashing stolen and forged checks at 22 different banks over the course of two and a half years was a single scheme "unified by the presence of the defendant Brown in each alleged act of fraud").

O'Brien takes issue with each of the government's five alleged commonalities, focusing on what she claims to be key differences among the transactions. *First*, O'Brien claims that not all of the transactions related to the investment properties because the 2006 line of credit was "used to cover business expenses." R. 46 at 8. But, as O'Brien acknowledges (R. 46 at 3), on a motion to dismiss this Court "assumes all facts in the indictment are true and must view all facts in the light most favorable to the government." *United States v. Segal*, 299 F. Supp. 2d 840, 844 (N.D. Ill. 2004) (quotation marks omitted). And the indictment alleges a direct connection between the 2006 line of credit and the investment properties—*i.e.*, that

the funds from the line of credit were used "to maintain the 46th Street and 54th Street properties." R. 1 at 4.

*Second*, O'Brien points out that even though she was allegedly involved in all four transactions, Bartko was not. She claims this means that the parties involved are not sufficiently alike. In *Hollnagel*, the court rejected a similar argument that because the indictment did not allege that each defendant "participated in each of the misrepresentations and transactions, the [indictment] must allege separate schemes and therefore fails for duplicity." 2011 WL 3664885, at *11. The court explained that in a scheme (unlike in a conspiracy), each participant "need not know about the existence and activities of the other co-schemers." *Id.* (citing *United States v. Wilson*, 506 F.2d 1252, 1257 (7th Cir. 1974)). Although the fact "that many of the alleged co-schemers were unaware of the existence of a larger scheme" would be "fatal to an allegation of conspiracy," it "is irrelevant to an allegation of a common scheme." *Brown*, 894 F. Supp. at 1155.

Thus, Bartko did not "need not know about" the 2004 and 2006 transactions for them to be part of a single scheme. *See Hollnagel*, 2011 WL 3664885, at *11. The indictment alleges that O'Brien was involved in each transaction, which is a significant, although not dispositive, commonality. R. 1. at 2-10; *see, e.g.*, *Brown*, 894 F. Supp. at 1154 (scheme was "unified by the presence of the defendant Brown in each alleged act of fraud"). And the indictment alleges integral involvement by Bartko—namely, that she reached agreements with O'Brien and played an

important role in the 2005 and 2007 transactions. R. 1 at 5-6, 7-10.[3] Those

allegations, if proven, would constitute participation by Bartko in a "common

---

[3]    O'Brien's filings raise a number of additional issues regarding Bartko's involvement that are not appropriate for this Court to consider or resolve on a motion to dismiss. In a supplement to her motion to dismiss and reply in support (R. 86 & R. 96), for example, O'Brien argues that the evidence before the grand jury did not support that Bartko was involved in the alleged scheme "beginning in or about 2004" as the government alleges at paragraph 2 of the indictment. O'Brien's argument about how accurately the indictment reflects the grand jury testimony goes well beyond the face of the indictment. And at the motion to dismiss stage, "[a]n indictment is reviewed on its face, regardless of the strength or weakness of the government's case." *United States v. White*, 610 F.3d 956, 958 (7th Cir. 2010). This Court therefore limits its consideration of O'Brien's argument to the face of the indictment.

On its face, O'Brien is right that paragraph 2 of the indictment "could have been framed in a more satisfactory manner." *Vaughn*, 722 F.3d at 925 (quotation marks omitted). Paragraph 2 implies that Bartko was involved as early as 2004, and the remainder of the indictment implicates Bartko only in the 2005 and 2007 transactions. R. 1 at 3-10. But paragraph 2 also states that the scheme is "further described below." *Id.* at 3. And the indictment goes on to make Bartko's involvement clear. *Id.* at 3-10. As explained above, "[t]he test for validity is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." *Vaughn*, 722 F.3d at 925 (quotation marks omitted).

O'Brien also raises a number of issues that go to the sufficiency of the government's evidence of Bartko's participation in the alleged scheme prior to 2007. O'Brien claims the grand jury testimony indicates that Bartko did not know about O'Brien's investment properties prior to 2007. R. 86 at 3. O'Brien further claims that the government's *ex parte* application to the Chief Judge of this district seeking tax returns in 2016 focused on evidence of the 2007 transaction. R. 72 at 2-6. And O'Brien contends there is no evidence that Bartko was a loan originator during the 2005 transaction. R. 46 at 7 n.19; R. 72 at 14 n.18. But these arguments implicate "factual issues that are not appropriate for the Court to resolve" on a motion to dismiss an indictment. *Hollnagel*, 2011 WL 3664885, at *11; *see also United States v. Polichemi,* 1995 WL 733473, at *4 (N.D. Ill. Dec. 8, 1995) ("It must be determined whether the indictment can fairly be read as alleging a single scheme; whether a single scheme will be proven at trial is not a consideration.").

O'Brien seems to be previewing a variance argument, which is of course premature. A defendant has a right to be tried on the charges actually brought by the grand jury. "A variance is fatal only when the defendant is prejudiced in her defense because she cannot anticipate from the indictment what evidence will be

scheme" to defraud. *See Wilson,* 506 F.2d at 1257 ("common scheme" to defraud existed when "each defendant knowingly participated and either mailed or caused the mailing charged in the indictment against him or her," and co-schemers were "responsible for the acts and declarations of another party in furtherance of the common scheme" with whom they had reached an agreement "whether or not he knew of or agreed to any specific mailing").

*Third*, O'Brien claims the transactions all involved different types of conduct: "for the 2004 transaction . . . lies about Ms. O'Brien's monthly income and her failure to disclose a mortgage liability; for the 2005 transaction . . . lies about Ms. O'Brien's employer and her monthly business income; for the 2006 transaction . . . lies about O'Brien Realty, LLC's annual revenue and annual profit; and for the 2007 transaction . . . lies relating to a straw buyer, concealment of funds from lenders, inflated sales price, and a false representation." R. 72 at 14. But "an indictment is not duplicitous if it charges a single offense carried out through many different means." *Davis*, 471 F.3d at 790. And the Seventh Circuit has recognized that "[s]chemes to defraud by mail often are multi-faceted and therefore the various means used in committing the offense may be joined without duplicity." *Zeidman*, 540 F.2d at 318.

Applying these principles in *Hollnagel*, the court found that "misrepresentations and misappropriations, bribes, and concealment" were "various

---

presented against her or she is exposed to double jeopardy." *United States v. Howard*, 619 F.3d 723, 727 (7th Cir. 2010) (quotation marks and alterations omitted).

means" used in a single course of conduct. 2011 WL 3664885, at *9. And in *United States v. Freed*, 2016 WL 374133 (N.D. Ill. Feb. 1, 2016), the court likewise found that two different types of conduct—(1) "taking money from . . . joint venture partners"; and (2) "ma[king] presentations to . . . various financial institutions that undervalued the joint venture's projected debt and the cost of sale"—were both "means" of committing fraud that constituted a single course of conduct. *Id.* at *3-4. Like in *Hollnagel* and *Freed*, the different types of conduct in this case are all fairly understood as different means of carrying out fraud. Indeed, the types of conduct in this case are more alike than those in *Freed* and *Hollnagel* because, as O'Brien acknowledges (R. 72 at 14), they all involved lies in documents submitted to lenders.

*Fourth*, O'Brien points out that the victims in this case were several different lenders. But the Seventh Circuit and courts in this district evaluating duplicity have not parsed the victims involved so finely. To the contrary, courts have found transactions involving several different *classes* of victims to be part of a single course of conduct. *E.g.*, *Zeidman*, 540 F.2d at 315 ("two classes of victims"); *Hollnagel*, 2011 WL 3664885, at *9 ("current and prospective investors and financial institutions"); *Freed*, 2016 WL 374133, at *3 ("joint venture partners and their bankers"). Here, there is one, common class of victims: lenders.

O'Brien relies on a decision by a court in the District of New Jersey in *United States v. Hinton*, 127 F. Supp. 2d 548, 556 (D.N.J. 2000), which concluded that an indictment was duplicitous in part because the scheme involved six different financial institutions. Unlike the *Hinton* court, which implied that a single scheme

to defraud cannot involve "more than one financial institution," *id.* at 554, the Seventh Circuit has found that alleged fraud involving even two different "classes of victims"—debtors and creditors—was properly joined as a single course of conduct. *Zeidman*, 540 F.2d at 315. The *Hinton* court acknowledged that a court in this district had rejected a duplicity challenge in a similar case. *Id.* at 554 (citing *Brown*, 894 F. Supp. at 1154). Moreover, *Hinton* is factually distinguishable. It involved "at least 128 transactions executed in furtherance of frauds" for which the "alleged perpetrator(s) for a particular institution's transactions d[id] not generally overlap." *Id.*

*Fifth*, O'Brien argues that each of the transactions in this case had different goals: "[t]he goal of the 2004 transaction involved obtaining a mortgage loan to purchase properties, the goal of the 2005 transaction involved refinancing two mortgage loans, the goal of the 2006 transaction involved obtaining a $25,000 Small Business Act commercial line of credit, and, the goal of the 2007 transaction involved Ms. O'Brien selling real estate properties." R. 72 at 16. O'Brien cites *United States v. DiCosola*, 2014 WL 4057420 (N.D. Ill. Aug. 14, 2014), for the proposition that "different charges" do not "relate to the same scheme just because they share a similar uncharged or non-criminal motive, especially when it is a generic one like financial gain." *Id.* at *5.

The *DiCosola* decision, on which O'Brien heavily relies throughout her filings, is distinguishable from this case for several reasons. It addressed a different type of motion governed by a different standard—namely, a severance motion for

misjoinder of counts under Fed. R. Crim. P. 8(a). *See id.* at *2. And, more importantly, *DiCosola* involved three very different kinds of crimes—bank fraud, tax violations, and bankruptcy fraud—joined in a single indictment. *See id.* at *1-3. Although this Court agrees with the *DiCosola* court that a broadly alleged motive like "financial gain" is not enough to link crimes together that are very different in nature, the transactions in this case are all executions of fraud involving lenders. The result may be different had the government tried to tie a dissimilar crime into the scheme. But the common goal that fairly can be gleaned from the indictment in this case is more specific than mere "financial gain." It is also more specific than "obtaining money from another" like in *United States v. Jenkins*, 884 F. Supp. 2d 789, 792 (E.D. Wis. 2012), another case on which O'Brien relies. The goal of each alleged transaction in this case was to make money off of O'Brien's two investment properties through fraud involving lenders.

Other courts have found similar goals sufficient to link different "means" of committing fraud together as part of a single course of conduct. *E.g.*, *Hollnagel*, 2011 WL 3664885, at *11 (the indictment "sets forth multiple means utilized by multiple Defendants to achieve the common goal of fraudulently obtaining and retaining financing for Defendant BCI and obtaining funds for the individual Defendants' personal enrichment"); *Freed*, 2016 WL 374133, at *3 (common goal or result was devaluation of the joint venture); *Brown*, 894 F. Supp. at 1153 (common goal was, in O'Brien's own words (R. 72 at 21 n.26), "to obtain money individually, with a share of the funds obtained through forging checks").

"Nor is it significant" in assessing whether the scheme had a common goal "that the whole scheme was not planned out in advance." *E.g.*, *Owens v. United States*, 221 F.2d 351, 354 (5th Cir. 1955). "A continuing intention to devise it, . . . or an imperfectly conceived plan to defraud which becomes more and more sophisticated . . . may well constitute a single scheme." *Id.*

Like in many fraud cases, "[t]he line between multiple offenses and multiple means to the commission of a single continuing offense" with a common goal is "difficult to draw" in this case. *Berardi*, 471 F.3d at 791 (quotation marks omitted). But this "decision" fell "to the discretion of the prosecution" as an initial matter, and this Court finds that the indictment was not an inappropriate exercise of that discretion. *See id.*

**Discrete Time Period.** Courts also have looked to whether transactions occurred "during a discrete period of time" to determine whether they are fairly alleged as part of a single scheme. *Davis*, 471 F.3d at 790 (quotation marks omitted). Although the transactions in this case were spread out over the course of three years, that time period is significantly shorter than time periods that other courts have found sufficiently discrete. In *Freed*, for example, the court declined to dismiss a mail and bank fraud indictment on duplicity grounds where it "set[ ] out an ongoing and continuous course of conduct . . . for a specific period, albeit one that lasted from at least November 2007 to at least February 2011." 2016 WL 374133, at *3. In *Hollnagel*, the court declined to dismiss a wire fraud count on duplicity grounds where it alleged a scheme lasting "from 2000 to mid-February 2009." 2011

WL 3664885, at *1. And in *Grossi*, the court declined to dismiss a fraud indictment on duplicity grounds alleging a scheme that involved six transactions between 1984 and 1993. 1995 WL 571417, at *1.

In sum, although the question is a close one, the Court finds that the transactions in this case had a "sufficiently close nexus" and occurred during a sufficiently discrete period of time "that they are fairly characterized as one scheme." *Zeidman*, 540 F.2d at 317.

### B. Prejudice

The second consideration in determining whether the indictment in this case is problematically duplicitous is "whether [O'Brien] would be prejudiced." *Grossi*, 1995 WL 571417, at *3; *accord Berardi*, 675 F.2d at 899. O'Brien alleges that the indictment prejudices her in a number of ways. To begin, O'Brien claims the indictment "prevents the jury from convicting on one offense and acquitting on another." *United States v. James*, 749 F. Supp. 2d 705, 708 (S.D. Ohio 2010) (quotation marks omitted). The Court finds that this concern is substantially addressed by the way the indictment is drafted. As explained above, the indictment is drafted to allege only one discrete and well-described execution in each count (one mailing in Count I and one loan by a bank in Count II). As long as the jury instructions and special verdict form make this clear (as further addressed below), a jury will not mistakenly convict simply because it "believed the 2004 allegations" or "the 2006 allegations" as O'Brien speculates. R. 46 at 21. A unanimous jury will need to find that the 2007 executions of mail and bank fraud took place. With

proper instructions, therefore, this indictment will not result in "[t]he overall vice of duplicity that the jury cannot in a general verdict render its finding on each offense, making it difficult to determine whether a conviction rests on only one of the offenses or both." *Buchmeier,* 255 F.3d at 425 (quotation marks omitted).

O'Brien also broadly alleges that the indictment violates her Sixth Amendment right to "notice of the nature and cause of the accusation." *Tanner*, 471 F.2d at 139. Again, this concern is addressed by the way the indictment is drafted. Unlike in *Tanner*, the indictment in this case is clear about which specific acts are alleged to have violated the laws in question. *Compare id.* ("individual roles" of defendants were not "specified," and government had "delineate[d] as a single offense all trips [transporting explosives] that occurred within a period of time" without specifying any particular trip as the basis of the charge).

O'Brien next claims that the indictment prejudices her "by prosecuting her for conduct that occurred outside the statute of limitations." R. 46 at 18. But O'Brien is not contesting for purposes of this motion (*see* R. 96 at 4 n.6) that the 2007 executions alleged to have constituted mail fraud (in Count I) and bank fraud (in Count II) occurred within the 10-year statute of limitations. *See* 18 U.S.C. § 3293. O'Brien is correct that if the 2004, 2005, and 2006 transactions were charged in separate counts, they would be subject to a motion to dismiss on statute of limitations grounds. But the government did not charge them as separate counts. It charged only one execution within the statutory period in Count I and one execution within the statutory period in Count II. As explained above, doing so was

well within the government's discretion. *See, e.g., Longfellow*, 43 F.3d at 325 (the fact that "only one or two executions fell within the Statute of Limitations does not detract from the entire pattern of loans[ ] being a scheme").

Other courts in this district have rejected arguments like O'Brien's for dismissal on duplicity grounds because "the government circumvented the statute of limitations" by lumping offenses together in an allegedly duplicitous count. *Hollnagel*, 2011 WL 3664885, at *12. To explain its rejection of this argument, the court in *Hollnagel* quoted *United States v. Wellman*, 830 F.2d 1453, 1464 (7th Cir. 1987), for the proposition that "'the fact that the scheme, and acts committed in furtherance of it, may have extended over a period in part barred by the statute of limitations does not mean that they are irrelevant in determining whether mailings occurring within the statutory period were in furtherance of a scheme to defraud.'" 2011 WL 3664885, at *12 (quoting *Wellman*, 830 F.2d at 1464 (time-barred evidence "was highly relevant to the existence of the very same scheme to defraud which the mailings in this case were alleged to have furthered")).

Similarly in *Grossi*, 1995 WL 571417, the defendant argued that a count should be dismissed on duplicity grounds because "prosecution in a single count deprive[d] him of the defense of the statute of limitations" and "much of the conduct charged should be barred as beyond the statute of limitations." *Id.* at *4. The *Grossi* court explained that "where a defendant is properly charged with multiple acts in furtherance of a single scheme, events occurring prior to the limitations period are relevant to establish a scheme to defraud and the defendants' intent." *Id.* (quotation

marks omitted). Likewise here, the Court finds that evidence regarding the pre-statute of limitations transactions is "relevant to establish a scheme to defraud and [O'Brien's] intent." *Id.* The government is not improperly "prosecuting [O'Brien] for conduct that occurred outside the statute of limitations" as she alleges. R. 46 at 18.

O'Brien further argues that because the government has grouped the transactions together, O'Brien cannot testify regarding certain transactions but invoke her Fifth Amendment right to remain silent on others, which she claims she would be able to do if they were charged as separate counts. *See United States v. Lewis*, 547 F.2d 1030, 1033 (8th Cir. 1976) ("A defendant may be willing to take the stand and testify as to one count but might prefer to remain silent and put the government to its proof on another count."). That is an unlikely scenario in the real, non-theoretical world. It is also a concern present any time the government charges several executions of a single scheme in one count that could be charged in separate counts, which, as explained above, is in its discretion to do.

Moreover, as the government points out, even if the grand jury had returned an indictment with a fraud scheme involving only the 2007 transactions, O'Brien still would be subject to cross-examination on the uncharged transactions if she chose to testify because they are all probative of her character for truthfulness under Fed. R. Evid. 608(b). *See, e.g.*, *United States v. Alexander*, 135 F.3d 470, 478 (7th Cir. 1998) (affirming denial of severance motion and explaining that in trial on other counts defendant "would be subject to cross-examination on the fraudulent representations [including fraudulent representations in loan documents] charged

in other counts because those instances of dishonesty are relevant to [defendant's] 'character for truthfulness' under Fed. R. Evid. 608(b)").

O'Brien responds that a right to cross-examination on these other transactions would not be automatic under Rule 608(b). *See* Fed. R. Evid. 608(b) (a "court *may*, on cross-examination, allow" "specific instances of a witness's conduct" "to be inquired into if they are probative of the [witness's] character for truthfulness or untruthfulness") (emphasis added). This point leads directly to O'Brien final, prejudice-related argument: that the indictment prejudices her by allowing time-barred evidence to be admitted as probative of a scheme that this Court otherwise may not admit under Fed. R. Evid. 608(b), 404(b), and 403. *See United States v. Seymour*, 472 F.3d 969, 971 (7th Cir. 2007) ("Rule 403 establishes the standard for the exercise of the judge's discretion in evidentiary matters, which of course includes cross-examination" under Rule 608(b)); *United States v. Gomez*, 763 F.3d 845, 860 (7th Cir. 2014) ("[T]o overcome an opponent's objection to the introduction of other-act evidence [under Rule 404(b)], the proponent of the evidence must first establish that the other act is relevant to a specific purpose other than the person's character or propensity to behave a certain way. . . . If the proponent can make this initial showing, the district court must in every case assess whether the probative value of the other-act evidence is substantially outweighed by the risk of unfair prejudice and may exclude the evidence under Rule 403 if the risk is too great.").

This is the most concerning type of potential prejudice that O'Brien alleges. But this potential for prejudice was equally present in *Grossi* and *Hollnagel*, where

the government charged multiple transactions as part of a single scheme that would have been excluded on statute of limitations grounds if charged in separate counts, and the courts found "evidence" of those transactions "relevant to establish a scheme to defraud and the defendants' intent." *Grossi*, 1995 WL 571417, at *4; *Hollnagel*, 2011 WL 3664885, at *12. The *Grossi* and *Hollnagel* courts did not express concern that the evidence might not otherwise be admitted under a Rule 608(b) and 404(b) analysis. Again, the government had discretion to charge the indictment the way it did as long as it fairly alleges a scheme, which the Court has found that it does. Moreover, the Court notes for the record that based on the evidence as it currently stands, the Court would very likely admit the evidence of the 2004, 2005, and 2006 transactions under Rule 608(b) (if O'Brien testified) or Rule 404(b) in any event.

## II. Measures For Curing Potential Prejudice

Even if the Court were to find the indictment duplicative, it would not find dismissal an appropriate remedy. "'[D]ismissal is a disfavored remedy that should be avoided when appropriate clarifying instructions can redress concerns over a potentially duplicitous indictment." *Freed*, 2016 WL 374133, at *3 (quotation marks omitted). "The Seventh Circuit has concluded that jury instructions can sufficiently safeguard against possibly duplicitous counts." *Id.*

In *United States v. Marshall*, 75 F.3d 1097 (7th Cir. 1996), for example, the Seventh Circuit reasoned that "even if the offenses are arguably separate and distinct," the jury instructions ensured a unanimous conviction. *Id.* at 1112. And in

*Buchmeier*, the Seventh Circuit explained that its conclusion in *Marshall* "that the indictment was not fatally flawed rested in large part on the fact that the district court had avoided prejudicing the defendant by instructing the jury that it was required to unanimously agree as to which of the offenses included in the disputed count the defendant had committed." 225 F.3d at 425 (citing *Marshall*, 75 F.3d at 1112); *accord United States v. Starks*, 472 F.3d 466, 471 (7th Cir. 2006) (proper jury instructions allayed any worries about duplicity). As these cases suggest, the Court will mitigate against "[t]he overall vice of duplicity," through a jury instruction and special verdict form making clear that the jury "must unanimously agree" that each element of the mail and bank fraud statutes have been met based on the 2007 executions. *See Buchmeier,* 255 F.3d at 425.

## Conclusion

For the foregoing reasons, the Court denies O'Brien's motion to dismiss (R. 45).

ENTERED:

Honorable Thomas M. Durkin
United States District Judge

Dated: November 9, 2017