UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | No. 17 CR 239 |
| JESSICA ARONG O'BRIEN, | Judge Thomas M. Durkin |
| Defendant | |
| and | |
| JUDGES' RETIREMENT SYSTEM AND STATE EMPLOYEES' RETIREMENT SYSTEM, | |
| Third Party Respondents. | |

**MEMORANDUM OPINION AND ORDER**

Jessica Arong O'Brien was convicted of mail fraud and bank fraud and sentenced to serve a year and a day of incarceration and to pay restitution. The Government moves for an order directing the Judges' Retirement System ("JRS") and State Employees' Retirement System ("SERS") to turn over O'Brien's pension contributions for the outstanding restitution. For the reasons set forth below, that motion is granted.

**Relevant Background**

Following a jury trial, O'Brien was found guilty of mail fraud and bank fraud. The Court sentenced O'Brien to a year and a day of incarceration and imposed an assessment of $200 and restitution of $660,000. *See* R. 325. O'Brien and her co-defendant Maria Bartko are jointly and severally liable for the restitution. *Id.* The

1

Court ordered O'Brien to pay restitution after her release from prison and set a schedule of monthly installments of at least 10% of her net monthly income. *See id.* The Government subsequently issued citations to discover assets. R. 346; R. 352. Following O'Brien's release from prison, the Government moved for turnover of her pension contributions, which have a combined value of $116,885.78, from the JRS and SERS. *See* R. 371. O'Brien presently has an outstanding restitution balance of $657,435, having paid $2,765 toward the restitution judgment. *See* R. 395.

## Discussion

O'Brien argues that the Court has not ordered her to pay restitution except according to the payment order, which she claims requires her to pay only 10% of her net monthly income on a monthly basis. Therefore, the Government's request is an effort to modify the restitution order, for which the deadline has long since passed. The Government explains that it is seeking to enforce the judgment through its statutory restitution lien under 18 U.S.C. § 3613 and 18 U.S.C. 3664(m)(1)(A), not the payment order. The Government adds that the full amount of the restitution judgment is presently due and has been due since O'Brien was released from prison, such that enforcement of the restitution is consistent with the judgment.

   I.   Restitution Lien

The Mandatory Victims Restitution Act ("MVRA") authorizes the Government to enforce restitution in several different ways. 18 U.S.C. § 3664(m)(1)(A); *see also United States v. Lemberger*, 673 F. App'x 579, 580 (7th Cir. 2017) (A restitution order

"may be enforced by the United States in the manner provided for" in 18 U.S.C. §§ 3571–3574 and §§ 3611–3615 or "by all other available and reasonable means."). One way is through the "practices and procedures for the enforcement of a civil judgment under Federal or State law." *See* 18 U.S.C. § 3613(a); *see also United States v. Kollintzas*, 501 F.3d 796, 801 (7th Cir. 2007). Upon entry of judgment, the order for payment of restitution became a lien in favor of the Government on all of O'Brien's property and rights to property. *See* 18 U.S.C. § 3613(c); *see also United States v. Miller*, 39 F.4th 844, 846 (7th Cir. 2022). "Liens to pay restitution debts are treated like tax liens . . . [and] are 'effective against every interest in property accorded a taxpayer by state law.'" *Miller*, 39 F.4th at 846 (quoting *Kollintzas*, 501 F.3d at 800). In other words, in enforcing the lien, the Government can step into O'Brien's shoes, acquiring whatever rights to property she possesses, i.e., her pension contributions. *United States v. Sayyed*, 862 F.3d 615, 619 (7th Cir. 2017) (citation omitted). Here, the Government seeks to step into O'Brien's shoes and collect her contributions to the JRS and SERS.

O'Brien argues that enforcing restitution through the lien conflicts with and modifies this Court's payment order. But the express language of the Court's written judgment and its statements at sentencing make clear that restitution is now due, and the monthly installments are a floor, not a ceiling. The judgment provided that the lump sum payment of $660,200, i.e., the entire penalty, was "due upon release from prison." R. 325 at 8. Payment of any remaining balance was to begin within 30

3

days of O'Brien's release.[1] *Id.* It is undisputed that O'Brien is no longer in prison. Any restitution that remains unpaid is therefore presently due. Further, as a condition of supervised release, the Court set a "monthly payment schedule" of "*at least* 10 percent of [her] net monthly income, defined as income net of reasonable expenses for basic necessities such as food, shelter, utilities, insurance, and employment-related expenses." *Id.* at 6 (emphasis added); *see also* R. 332 at 73:17-23 (stating the same at sentencing hearing). Thus, the schedule, by its terms, sets a minimum monthly payment, not a maximum.

Further, nothing in the Court's written judgment or statements at sentencing prevents the Government from collecting the balance owed by means other than and in addition to the monthly payments. *See United States v. Fariduddin*, 469 F.3d 1111, 1113 (7th Cir. 2006) (where the plea agreement made restitution due immediately, condition of supervised release requiring payment of minimum monthly installments was a floor, not a ceiling of the Government's permitted recovery); *United States v. Kolbusz*, No. 12 CR 782, 2023 WL 2161661, at *9 (N.D. Ill. Feb. 22, 2023) (defendant's compliance with schedule requiring payments of at least 10% of net monthly income did not preclude the Government from collecting funds at issue to satisfy restitution

---

[1] The Court notes that the Judgment states that the balance of restitution is due in accordance with Section E, which reads, "Payment during the term of supervised release will commence within 30 days after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time." R. 325 at 8. When read in combination with the conditions of supervised release and the Court's explanation at the sentencing hearing, it is clear that the "payment plan" referred to is the minimum monthly installments set as a condition of supervised release.

4

judgment) (citing *United States v. Wykoff*, 839 F.3d 581, 582 (7th Cir. 2016)).[2] Accordingly, the Government's enforcement of restitution through the statutory lien neither modifies nor conflicts with the payment order.

O'Brien argues that *United States v. Martinez* demands a different result. In that non-binding case, the Tenth Circuit held that the Government could not garnish a defendant's retirement accounts "to enforce payments that are not yet due under [the defendant's] court-ordered payment schedule." *United States v. Martinez*, 812 F.3d 1200, 1201 (10th Cir. 2015). But the reason they were not yet due was because the district court had expressly made only $300 out of the total amount in restitution due "immediately" and the remainder due in monthly installments of 25% net income. *Id*. at 1203-04. Here, the Court made the full amount of restitution due upon O'Brien's release from prison and set a *minimum* monthly payment for any outstanding balance. As such, the Government is not "usurping" this Court's authority in ordering restitution, but rather enforcing payment that is now due.[3]

---

[2] O'Brien contends that *Fariduddin* is distinguishable because it involved a plea agreement. That argument doesn't hold water. The point is that in *Fariduddin*, the full payment of restitution was due at a certain time, and the district court set a minimum payment on any outstanding balance as a condition of supervised release. 469 F.3d at 1112. That is precisely what the Court did here.

[3] Indeed, the Tenth Circuit subsequently recognized the "crucial distinction" between *Martinez* and a case where "the judgment specifies that the amount owed is due in full on the date of judgment, regardless of whether the judgment includes a back-up schedule of payments to cover any unpaid amounts." *United States v. Williams*, 898 F.3d 1052, 1055 (10th Cir. 2018).

5

II.     Tax Liability and Survivorship Benefits

O'Brien does not dispute that her pension contributions are nonexempt assets under 18 U.S.C. § 3613(a)(1) or that she is entitled to a refund of them. Instead, she challenges the turnover based on the tax consequences of the early withdrawal and effect on survivorship benefits. Both arguments are unavailing.

First, O'Brien argues that the resulting tax liability and penalty for early distribution would improperly increase restitution and, given her inability to pay, compromise her husband's interests in jointly held property. O'Brien does not cite to any case where a court denied a turnover order due to the tax consequences. In contrast, in *Sayyed*, the Seventh Circuit held that the Government could access his retirement funds "subject to the tax penalties faced by Sayyed for early distribution of his retirement funds." 862 F.3d at 619. The Court will follow the same course here. The Government should structure the liquidation and turnover to cover O'Brien's tax liability. *See, e.g.*, *United States v. Sayyed*, No. 11 CR 625-1, at Dkt. 183, 184 (turnover order requiring the Clerk to place 30% of the remitted retirement account funds in escrow for the income tax consequences of early withdrawal); *see also* R. 388 at 34-35. Moreover, there is no early withdrawal penalty because the withdrawal will be done pursuant to a court order. *See Murillo v. Comm'r*, 75 T.C.M. (CCH) 1564 (T.C.), *aff'd sub nom. Murillo v. Comm'r*, I.R.S., 166 F.3d 1201 (2d Cir. 1998), and *acq.*, IRS Announcement Relating to: Murillo, 1999-1 C.B. XIX (IRS ACQ 1999). In other words, there will be no out of pocket cash consequence to O'Brien. Any tax liability will be

withheld from the amounts used to partially satisfy the restitution order, while the withheld amount will be used to satisfy the tax liability.

Next, O'Brien argues that the forced withdrawal will unconstitutionally deprive her family of their survivorship rights to her pension. Here too, O'Brien fails to cite any authority for the proposition that her husband and children have a property interest in these benefits, much less an "irrevocable" one. *See* R. 381 at 29. As the Seventh Circuit explained, the Government's access to retirement funds to enforce restitution is not based on rights that O'Brien "would *prefer* to exercise; rather it is based on upon the rights [she] *possesses*." *Sayyed*, 862 F.3d at 619 (affirming turnover of retirement account funds to enforce restitution judgment) (emphasis in original).[4] O'Brien has a present right to immediately access her total contributions, so the Government can step into her shoes and do so too. *See* 40 ILCS 5/18-129(a) ("A participant who ceases to be a judge" is entitled to a refund of her "total contributions" including "contributions for the survivor's annuity.").[5]

---

[4] O'Brien argues that *Sayyed* is distinguishable because it involved a plea agreement that made restitution "due immediately." Perhaps the fact that this Court's payment order made restitution due upon O'Brien's release from prison would have made a difference had the Government sought the turnover of her pension funds *before* she was released. But they didn't, and at this time, the full amount of restitution is due.
[5] O'Brien suggests in her surreply that the JRS and/or SERS must withhold some percent of the refund for federal and state income taxes. To the extent that is the case, O'Brien would not have a right to possess the withheld amount, so neither would the Government. Moreover, this turnover is not, as O'Brien claims, in conflict with the Court's order that she "provide financial support to any dependents *if financially able*." R. 325 at 3 (emphasis added).

7

III. Remaining Issues

O'Brien argues that she is entitled to a hearing on this motion under Federal Rule of Criminal Procedure 32.1(c). However, that provision applies to modifications to the conditions of probation and supervised release. As discussed above, the Government's motion does not represent a request for modification of the terms of supervised release. Further, an evidentiary hearing is not otherwise required. There are no factual disputes, and the parties sufficiently briefed the legal issues, such that the Court does not need oral argument to understand the parties' positions or the relevant case law.

O'Brien also contends that ordering turnover violates her right to be heard on this "special condition of supervised release" at sentencing. As an initial matter, courts routinely order turnover of funds to satisfy restitution *after* sentencing. *See Kollintzas*, 501 F.3d at 800 ("It has been established in this and other circuits that district courts may entertain civil garnishment and other collection proceedings as *postjudgment remedies* within an underlying criminal case[.]") (emphasis added). O'Brien points to Federal Rule of Criminal Procedure 32(i)(1)(C), which requires that district courts "allow the parties' attorneys to comment on the probation officer's determination and other matters related to an appropriate sentence." But the Government's enforcement of restitution pursuant to the statutory lien is not a condition of supervised release or the type of "other matter" contemplated by this rule. Accordingly, the Government's effort to collect outstanding restitution through the statutory lien is not a matter that needed to be discussed at O'Brien's sentencing.

8

Lastly, O'Brien asks for a stay pending the appeal of this order. Federal Rule of Criminal Procedure 38(e) allows a court to stay "on any terms considered appropriate" a sentence providing for restitution. In deciding whether to grant a stay pending appeal, the Court considers "the moving party's likelihood of success on the merits, the irreparable harm that will result to each side if the stay is either granted or denied in error, and whether the public interest favors one side or the other." *In re A & F Enters., Inc. II*, 742 F.3d 763, 766 (7th Cir. 2014).

O'Brien is unlikely to succeed on the merits because of the existing precedent for granting turnover orders under similar circumstances. *E.g.*, *Sayyed*, 862 F.3d. at 617. However, if a stay is denied in error, O'Brien would suffer irreparable harm in light of the meaningful financial impact of the collection and inability to reverse the refund of her pension contributions. While the public interest favors the full and timely payment of restitution to the victims, O'Brien will continue making the minimum monthly payment in the interim. Accordingly, the Court will stay the enforcement of the turnover order pending appeal. Additionally, to protect the Government's and victims' interests, the Court will prohibit any liquidation of O'Brien's contributions, prohibit O'Brien from making any changes to her pensions, and prohibit third parties from disbursing any funds or making any changes to O'Brien's pension contribution interest. *See* Fed. R. Crim. P. 38(e)(2).

## Conclusion

For the foregoing reasons, the Government's motion for turnover is granted. The Government is to submit a proposed turnover order consistent with this Memorandum Opinion and Order.

ENTERED:

*Thomas M Durkin*
_____

Honorable Thomas M. Durkin
United States District Judge

Dated: May 25, 2023